Erica A. Maharg (Bar No. 279396)
Nicole C. Sasaki (Bar No. 298736)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: erica@baykeeper.org
Email: nicole@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>             Plaintiff,<br><br>      v.<br><br>JAMES F. TAYLOR dba PINOLE RODEO AUTO WRECKERS,<br><br>             Defendant. | Civil No. 3:15-cv-05825-MEJ<br><br>**REQUEST FOR ENTRY OF [PROPOSED] SETTLEMENT AGREEMENT AND DISMISSAL; [PROPOSED] ORDER**<br><br>(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)<br><br>Honorable Maria-Elena James |

1      WHEREAS, on September 19, 2016, Plaintiff San Francisco Baykeeper ("Baykeeper")

2   notified the Court that Baykeeper and Defendant James F. Taylor dba Pinole Rodeo Auto

3   Wreckers ("PRAW") (collectively, the "Parties") had reached a tentative settlement in this action

4   and would be sending a copy of the [Proposed] Settlement Agreement to the U.S. Department of

5   Justice and to the U.S. Environmental Protection Agency for a mandatory 45-day review period

6   under 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5, *see* Dkt. No. 20;

7      WHEREAS, on November 7, 2016, the U.S. Department of Justice notified the Court and

8   the Parties that it did not object to the entry of the [Proposed] Settlement Agreement, *see* Dkt.

9   No. 22;

10     WHEREFORE, Baykeeper respectfully requests that the Court approve and enter the

11   [Proposed] Settlement Agreement as an Order of the Court, order that the above-captioned action

12   be dismissed with prejudice, and retain jurisdiction over the Parties for the sole purpose of

13   enforcing compliance by the Parties with the terms of the Settlement Agreement until the

14   Settlement Agreement terminates;

15     WHEREFORE, Baykeeper respectfully requests the Court to approve and enter the

16   [Proposed] Order attached hereto.

DATE: November 7, 2016                          Respectfully Submitted,

                                                /s/ Nicole C. Sasaki
                                                ─────────────────────────────
                                                Nicole C. Sasaki
                                                Attorneys for Plaintiff
                                                SAN FRANCISCO BAYKEEPER

1

**[~~PROPOSED~~] ORDER**

2

      IT IS HEREBY ORDERED that the [Proposed] Settlement Agreement, attached hereto as

3

Exhibit A, is fully incorporated herein by reference and is entered as an Order of the Court.

4

      IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the Parties for the

5

sole purpose of enforcing compliance by the Plaintiff and Defendant with the terms of the Settlement

6

Agreement until the Settlement Agreement terminates.

7

      IT IS FURTHER ORDERED that the above-captioned action against Defendant is dismissed

8

with prejudice.

9

10

IT IS SO ORDERED.

11

12

Date: __January 19, 2017_____         NORTHERN DISTRICT OF CALIFORNIA

13

14

_____

15

Honorable Maria-Elena James
United States District Court

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Erica A. Maharg (Bar No. 279396)
Nicole C. Sasaki (Bar No. 298736)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: erica@baykeeper.org
Email: nicole@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>JAMES F. TAYLOR dba PINOLE RODEO AUTO WRECKERS,<br><br>        Defendant. | Case No.: 4:15-cv-05825-MEJ<br><br>[~~PROPOSED~~] **SETTLEMENT AGREEMENT**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)**<br><br>**Honorable Maria-Elena James** |

**SETTLEMENT AGREEMENT**

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of San Francisco Bay and other area waters;

WHEREAS, James F. Taylor, doing business as Pinole Rodeo Auto Wreckers ("PRAW") operates an automobile dismantling facility, located at 700 Parker Avenue, Rodeo, California 94572 (the "Facility");

WHEREAS, Baykeeper and PRAW are collectively referred to herein as the "Parties";

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ (hereinafter "Industrial Stormwater Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act (the "Clean Water Act" or "Act"), 33 U.S.C. § 1342.  These industrial activities include, *inter alia*, the dismantling and wrecking of used motor vehicles to recycle and resell parts;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including PRAW: (1) develop and implement a stormwater pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on September 18, 2015, Baykeeper served PRAW, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Water Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Industrial Stormwater

Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility;

WHEREAS, on December 18, 2015, Baykeeper filed a complaint ("Complaint") alleging certain violations of the Act and the Industrial Stormwater Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility;

WHEREAS, PRAW denies all allegations and claims contained in the Complaint and reserves all rights and defenses with respect to such allegations and claims;

WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED BY THE COURT, AS FOLLOWS:

### I.        OBJECTIVES

1.    It is the express purpose of the Parties to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251 et seq., and to resolve those issues alleged by Baykeeper in its 60-Day Notice and Complaint.  In light of these objectives and as set forth fully below, PRAW agrees to comply with the provisions of this Settlement Agreement and to comply with the Industrial Stormwater Permit and all applicable provisions of the Clean Water Act.

### II.       TERM OF SETTLEMENT AGREEMENT

2.    **Effective Date**:  The Effective Date of this Settlement Agreement shall be the last day for the U.S. Department of Justice to provide comment on this Settlement Agreement, i.e., the 45th day following the U.S. Department of Justice's receipt of the Settlement Agreement.

3.    **Term of Settlement Agreement**:  This Settlement Agreement shall continue in effect until November 15, 2019 (the "Term"), at which time the Settlement Agreement, and all obligations under it, shall automatically terminate, unless one of the Parties has invoked Dispute Resolution in accordance with Paragraph 24.

4.    **Early Termination**:  If PRAW should cease industrial operations at the site and file a Notice of Termination ("NOT") under the Industrial Stormwater Permit before the termination date stated in

1   Paragraph 3, PRAW shall send Baykeeper a copy of the proposed NOT concurrent with its submittal to

2   the Regional Water Board.  Within ten (10) days of the Regional Water Board's approval of the NOT,

3   PRAW shall notify Baykeeper in writing of the approval and remit all outstanding payments, including

4   stipulated payments, to Baykeeper.  This Settlement Agreement shall terminate on the day that PRAW

5   has notified Baykeeper of an approved NOT and has remitted all outstanding payments.  In the event a

6   new successor or assign continues industrial operations at the site and assumes responsibility for

7   implementation of this Settlement Agreement pursuant to Paragraph 43, PRAW shall notify Baykeeper

8   within ten (10) days of the transition.

9               **III.        BEST MANAGEMENT PRACTICES**

10      5.    In order to further reduce or prevent pollutants associated with industrial activity from

11  discharging via stormwater to the waters of the United States, PRAW shall implement additional

12  appropriate structural and non-structural Best Management Practices ("BMPs") to, at a minimum,

13  comply with the requirements of the Industrial Stormwater Permit.

14      6.    **Site Map**:  Within thirty (30) days of the Effective Date, PRAW shall update the Site Map

15  included in the Facility SWPPP to comply with the Industrial Stormwater Permit, Section X.E.

16  Specifically, the Site Map shall clearly denote (a) the topography and the direction of stormwater flow

17  for each drainage area of the Facility, (b) property boundaries, (c) known or suspected drop inlets, (d)

18  ground type (pervious or impervious), (e) berms and the materials they are composed of, (f) any

19  permanent structures and features, (g) discharge points, (h) sampling points, and (i) all other physical

20  structures or items relevant under the Industrial Stormwater Permit and this Settlement Agreement,

21  including, but not limited to, the berms, crusher area, detention basin, and drainage ditch.  During the

22  Term, if PRAW makes significant changes to the Facility, such as moving a discharge or sampling

23  point, modifying the topography of the site so as to change a drainage area, or removing or adding

24  structural BMPs, PRAW shall update the SWPPP within forty-five (45) days and submit the revised

25  SWPPP to Baykeeper and upload to the Storm Water Multiple Application and Report Tracking System

26  ("SMARTS"), consistent with the requirements of Paragraph 11, below.

27      7.    **Non-Structural Best Management Practices**.  Beginning on the October 31, 2016, unless

28  otherwise stated, PRAW shall implement the following non-structural BMPs:

A. **Storm Drain Inlet/Catch Basin Best Management Practices**:

i. Storm Drain Inlet/Catch Basin Inspections: Within thirty (30) days of the Effective Date and between September 1 and October 1 of each subsequent year, PRAW shall inspect any storm drain inlets, catch basins, discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility. PRAW shall promptly clean, as needed, each drain inlet, catch basin, discharge and sampling point, filtration/treatment device, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris.

ii. Storm Drain Inlet/Catch Basin Maintenance and Cleaning: On a weekly basis between October 1 to May 31 of each year ("Wet Season"), PRAW shall inspect all storm drain inlets, catch basins, discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment or debris. PRAW shall properly dispose of any dust, sediment, debris, or other removed pollutants. Between June 1 and September 15 of each year ("Dry Season"), PRAW shall cover all storm drain inlets to prevent accumulation of debris and dry-weather discharge.

B. **Site Sweeping**: PRAW shall sweep by hand the accessible paved areas of the Facility at least two (2) times per day during the Wet Season and at least one (1) time per day during the remaining portion of the year ("Dry Season") on each day that PRAW is actively operating.

C. **Vehicle Dismantling**: All vehicles shall be dismantled under cover; dismantling shall include, at a minimum, disconnecting all hoses and wires; draining all oil and all other fluids from the vehicle to the extent feasible; and removing the engine and all other mechanical parts in the vehicle that may contribute to oil and grease or heavy metals in the Facility's stormwater discharges.

D. **Abandoned or Inutile Equipment Storage and Removal**: PRAW shall either store under cover or remove from the Facility all abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as a source for pollutant loading.

E. **Vehicle and Equipment Management**: PRAW shall implement BMPs to reduce or minimize pollutant release from equipment such as forklifts, hydraulic lifts, trucks, and other heavy equipment that are parked or stored in areas of the Facility from which stormwater discharges. Such BMPs shall include relocating the vehicles offsite to better facilitate sweeping of paved areas, placing

drip pans under equipment stored or parked for a week or longer, weekly inspections for evidence of leaks from such equipment, and prompt clean-up of spills, drips, or leaks from such equipment.  Any spilled substances and absorbent materials used in cleaning up spills shall be disposed of in accordance with all local, state, and federal laws and regulations.

F.  **Vehicle and Equipment Maintenance**:  PRAW shall not conduct routine (*i.e*., non-emergency) vehicle or movable equipment maintenance or repair at the Facility in outdoor, uncovered areas from which stormwater discharges during rainfall events.

8.  **Structural Best Management Practices:**  PRAW shall develop and implement the following structural BMPs:

A.  **Berm to Prevent Offsite Stormwater Discharges**:  No later than October 31, 2016, PRAW shall construct an impervious berm with plastic lining around the Facility to prevent offsite stormwater discharges during the 2016-2017 Wet Season.

B.  **Concrete Pad Expansion**:  No later than October 31, 2016, PRAW shall expand the existing concrete pad in the Facility's crusher area to extend to and include the following areas:

    i.      The access road/driveway southwest of the crusher;

    ii.     A minimum of ten (10) feet behind the crusher to the east/northeast;

    iii.    The area north of the crusher up to the north fence; and

    iv.     An area of a minimum of 100 square feet behind the crusher to the east/southeast.

No later than October 31, 2016, PRAW shall install a concrete berm around the perimeter of the expanded concrete pad, and shall install a roofed structure to cover the crusher area to minimize stormwater exposure.

C.  **Regrade and Pave or Stabilize Northwest Yard**:  No later than January 31, 2017, PRAW shall clean out all debris, contaminated soil, scrap, and/or junk located in the northwest yard and properly dispose of all removed material offsite; regrade the northwest yard to drain south/southeast; and pave the regraded surface with concrete or asphalt, or stabilize the regraded surface with Department of Transportation recycled concrete road base or 3/4-inch drain rock underlined with filter fabric.

D.      **Berm to Prevent Offsite Run-On**:  No later than January 31, 2017, PRAW shall construct an impervious berm made out of compacted recycled road base and lined with plastic lining along the Facility's northwest and west property lines to prevent stormwater run-on from offsite sources.

E.      **Stormwater Detention Basin**:  No later than October 31, 2016, PRAW shall complete excavation of an extended detention basin at the south end of the Facility, with the entire Facility graded to drain to the basin.  The basin shall be a minimum of 600 cubic feet, have a flat bottom, and 3:1 slopes on the sides.  No later than January 31, 2017, PRAW shall line the basin with filter fabric and cover the sides with rock and/or vegetation.

F.      **Drainage Ditch**:  No later than April 30, 2017, PRAW shall construct a drainage ditch along the inside of the Facility's northwest and east property lines.  PRAW shall grade the drainage ditch to convey stormwater to the stormwater detention basin at the south end of the Facility, and line the drainage ditch with filter fabric covered with rock and/or vegetation.

G.      **Sump Pump and Treatment System**:  No later than July 31, 2017, PRAW shall install a sump pump on the floor of the stormwater detention basin to regulate the volume of stormwater stored in the basin to control for flooding and vectors.  No later than April 30, 2017, PRAW shall submit to Baykeeper the specifications for a proposed advanced stormwater treatment system sized to treat to a minimum flow-through treatment standard of 14 gallons per minute.  Baykeeper shall have fourteen (14) days to comment and approve of the proposed treatment system.  No later than July 31, 2017, PRAW shall install the agreed upon treatment system.  Under high-volume conditions, PRAW shall pump stormwater from the basin to the treatment system prior to discharge offsite.

H.      PRAW shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all structural BMPs by the required deadlines.

I.      **Maintenance of BMP Structural Controls:**  Beginning on the Effective Date or the date of installation, PRAW shall maintain all structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

9.      **Employee Training:**  Beginning on the Effective Date, and annually thereafter, and within thirty (30) days of hiring of new employees, PRAW shall conduct training for all appropriate employees to

explain the requirements of the Facility's SWPPP to the extent applicable to such employee.  Training shall focus on the employee's role in implementing various stormwater control measures including, for example, implementation of BMPs, sweeping, vehicle maintenance, or facility inspections.  Training shall be conducted bilingually (*i.e.,* Spanish/English or other pertinent language) to the extent that such employee is not reasonably able to comprehend training in English.  If and when appropriate, PRAW shall integrate any new training requirements resulting from this Settlement Agreement into the Facility SWPPP.  PRAW shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

10.   **Amendment of SWPPP**:

A.      Within thirty (30) days of the Effective Date, PRAW shall amend the Facility SWPPP to incorporate the requirements and BMPs set forth in this Section III of the Settlement Agreement and Section X of the Industrial Stormwater Permit and submit the updated SWPPP to Baykeeper within ten (10) business days thereafter.  Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP.  Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, PRAW shall make all of Baykeeper's changes to the amended SWPPP unless PRAW timely requests a meet and confer in accordance with Paragraph 24 to discuss any concerns.  Compliance with the SWPPP, as amended in accordance with this Paragraph, shall at all times be a requirement of this Settlement Agreement.

B.      PRAW shall revise the Facility SWPPP if there are any material changes in the Facility's operations, including, but not limited to, changes to stormwater discharge points or BMPs, such as installation of the detention basin and treatment system.  These SWPPP revisions shall occur within forty-five (45) days of the changes in operations.

C.      PRAW shall submit any revised SWPPP within ten (10) days of the revisions.  Baykeeper shall provide comments, if any, to PRAW within thirty (30) days of receipt of the revised SWPPP. Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, PRAW shall make all of Baykeeper's changes to the amended SWPPP unless PRAW timely requests a meet and confer in accordance with Paragraph 24 to discuss any concerns.

D.     PRAW shall upload the Facility SWPPP to SMARTS within thirty (30) days of finalizing revisions in accordance with this Settlement Agreement.

11.   **Additional BMPs**:  The BMPs included in this Section constitute a preliminary approach to stormwater management at the Facility for the first two Wet Seasons of the agreement (i.e., the 2016-2017 and 2017-2018 Wet Seasons).  If, after implementing these BMPs, the sampling conducted in accordance with Section IV indicates that the Facility's stormwater discharges continue to exceed the Target Levels in Exhibit 1, or otherwise do not meet water quality standards, PRAW shall propose additional BMPs as part of any Action Plan prepared in accordance with Paragraph 14.

### IV.        SAMPLING, MONITORING, INSPECTION & REPORTING

12.   **Sampling Program - Stormwater**:  Beginning with the 2017-2018 Wet Season, PRAW shall collect and analyze stormwater samples from all discharge points according to the following schedule:

A.     PRAW shall collect and analyze samples from the first two (2) qualifying storm events, as defined in Section XI.B. of the Industrial Stormwater Permit ("QSEs"), within the first half of each Wet Season during the Term (October 1 to December 31).

B.     PRAW shall collect and analyze samples from the first two (2) QSEs within the second half of each Wet Season during the Term (January 1 to May 31).

C.     If PRAW is unable to take a sample from any discharge point during any of the first two (2) QSEs of the first half of the Wet Season or the first two (2) QSEs of the second half of the Wet Season, PRAW shall continue to sample from any subsequent QSE until four (4) samples have been collected from all discharge points in that Wet Season.

D.     In the event that PRAW is unable to collect four (4) samples in a Wet Season, PRAW shall explain in writing in the End-of-Season Summary under Paragraph 13 why it was unable to collect the required sample(s).

E.     Each stormwater sample must be analyzed for the presence of each of the parameters listed in Exhibit 1.

F.     Should industrial processes materially change at the Facility, PRAW shall conduct sampling for any additional analytical parameters listed in Table 1 of the Industrial Stormwater Permit and additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in the Facility's

1    stormwater discharges in significant quantities as a result of the changed industrial processes.  PRAW

2    shall notify Baykeeper of any such changes within thirty (30) days of such a change.

3          G.      **Certified Lab**:  Except for pH samples, PRAW shall have all stormwater samples

4    collected pursuant to this Settlement Agreement delivered to a California state certified environmental

5    laboratory for analysis within the time needed for analysis within laboratory method allowable hold

6    times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or

7    below the Target Levels set forth in Exhibit 1.  Baykeeper shall be permitted, and PRAW will authorize

8    Baykeeper, to verify that the lab analyzing PRAW's stormwater samples that their analysis is proper.

9          H.      **Sample Result Reporting**:  After the Effective Date, PRAW shall provide complete

10   results from sampling and analysis to Baykeeper within ten (10) calendar days and to SMARTS within

11   thirty (30) days of receipt of the laboratory report from each sampling event.

12   13.   **End-of-Season Summary**:  By July 31 following each Wet Season, beginning with the 2017-

13   2018 Wet Season, that occurs during the Term, PRAW shall prepare and send to Baykeeper an End-of-

14   Season Summary that includes:  (1) a summary chart with all of the sample results from the previous

15   Wet Season including the constituent concentration(s) from sample(s) collected at the Facility exceeding

16   the Target Levels in Exhibit 1 ("Exceedance(s)"); and (2) identification of any new BMP(s) that PRAW

17   has implemented or will implement not already discussed in a prior End-of-Season Summary or Action

18   Plan for the immediately previous Wet Season.

19   14.   **Action Plan**:  Beginning with the 2017-2018 Wet Season, if any stormwater sample result

20   during a Wet Season exceeds any Target Level set forth in Exhibit 1, PRAW shall submit an Action

21   Plan in addition to an End-of-Season Summary by July 31.

22   15.   **Contents of Action Plan**:  If an Action Plan is required, it shall include the following:

23         A.      The possible sources of the Exceedance(s) during the applicable Wet Season;

24         B.      A proposal for and evaluation of new site-specific BMPs designed to reduce pollutants in

25   future stormwater discharges to the Target Levels in Exhibit 1 and to achieve BAT and BCT for those

26   constituents;

27

28

C.      Data, drawings, and other design rationale demonstrating that the proposed site-specific BMPs will reduce pollutants in future stormwater discharges to the Target Levels in Exhibit 1 and achieve BAT and BCT; and

D.      A schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Wet Season.  In any Action Plan, PRAW shall consider appropriate structural BMPs as necessary to adequately address its Exceedances.

16.     **Baykeeper Review of Action Plan**:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's proposed revisions, PRAW shall consider each of Baykeeper's recommended revisions to the Action Plan and accept them or timely request to meet and confer, in accordance with Paragraph 24.

17.     **Implementation of Action Plan**:

A.      PRAW shall implement the Action Plan(s) adopted pursuant to this Settlement Agreement as an obligation of this Settlement Agreement.

B.      PRAW shall diligently file and pursue all required local agency applications for permits and/or approvals for the BMPs included in any Action Plan.  PRAW shall further diligently pursue the procurement of contractors, labor, and materials to complete all BMPs by the October 1 deadline.

C.      Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Settlement Agreement are implemented, PRAW shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP and shall provide Baykeeper with a copy of such revised SWPPP.

18.     During each Wet Season, PRAW has an ongoing obligation to evaluate the BMPs implemented at the Facility and included in this Settlement Agreement and any current or previous Action Plans, and, if the Target Levels are exceeded, make attempts to reduce the concentrations to Target Levels for the remainder of the Wet Season.  PRAW shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

19.     **Site Access**:  During the Term, PRAW shall permit representatives of Baykeeper to perform up to two (2) physical inspections per year of the Facility during operating hours ("Site Inspection").  Baykeeper shall provide PRAW forty-eight (48) hours' notice in advance of such Site Inspections.

Baykeeper shall comply with all safety instructions provided to Baykeeper by PRAW's staff during all Site Inspections.  During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges, logs, and take photos and/or videos.    Any samples, photos, and/or videos taken by Baykeeper shall be used exclusively by Baykeeper for internal purposes only.

20.   **Reports**:  During the Term, PRAW shall provide Baykeeper with a copy of all documents submitted to the Regional Water Board or the State Water Board concerning the Facility's compliance with the Industrial Stormwater Permit.  Such documents and reports shall be transmitted to Baykeeper via electronic mail at the time the documents are submitted to the Regional Water Board or State Water Board.

## V.        FEES AND COSTS

21.   **Reimbursement of Fees and Costs**:  PRAW shall reimburse Baykeeper in the amount of ten thousand dollars ($10,000.00) to help cover Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Settlement Agreement, bringing these matters to PRAW's attention, and negotiating a resolution of this action.  PRAW shall tender five thousand dollars ($5,000.00), payable to Baykeeper, within thirty (30) days of the Effective Date.  PRAW shall tender five thousand dollars ($5,000.00), payable to Baykeeper, by July 31, 2017.

22.   **Compliance Monitoring Funds:**  PRAW shall provide to Baykeeper a total of one thousand dollars ($1,000.00) for costs and fees associated with monitoring PRAW's compliance with this Settlement Agreement through the termination date of this agreement.  PRAW shall tender a compliance monitoring fund payment of one thousand dollars ($1,000.00), payable to Baykeeper, by July 31, 2018.

## VI.        DISPUTE RESOLUTION AND STIPULATED PENALTIES

23.   **Dispute Resolution**:  If a dispute under this Settlement Agreement arises or the Parties believe that a breach of this Settlement Agreement has occurred, they shall follow the following procedure:

A.      The Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Settlement Agreement has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.

B.      If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Settlement Agreement.

C.      The Parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

24.    **Stipulated Payments:**  PRAW shall pay the following stipulated payments during the Term.

A.      $100 for each failure to collect a sample required under this Settlement Agreement;

B.      $50 per day after the report due date for each failure to timely submit any document, report or other communication required in this Settlement Agreement; and

C.      $50 per day payment for every business day (Monday through Friday, excluding state and federal holidays) past the due date that PRAW fails to submit any payments due under Paragraphs 21-23 of this Settlement Agreement.

D.      Any stipulated payments described above shall be paid to Baykeeper within thirty (30) days of notification of the failure to comply.  Baykeeper shall forgive stipulated payments if PRAW corrects the failure within five (5) business days of notification by Baykeeper of PRAW's failure to comply.

### VII.      JURISDICTION AND DISMISSAL OF COMPLAINT

25.    **Jurisdiction.**  For the purposes of this Settlement Agreement, the Parties stipulate that the United States District Court of California, Northern District of California, has jurisdiction over the Parties and subject matter of this Settlement Agreement.  The Parties stipulate that venue is appropriate in the Northern District of California and that Baykeeper has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

26.    **Jurisdiction to Enforce Settlement Agreement.**  The Court referenced above shall retain jurisdiction over the Parties and subject matter of this Settlement Agreement for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Settlement

Agreement.  The Court shall have the power to enforce this Settlement Agreement with all available legal and equitable remedies.

27.  **Submission of Settlement Agreement to DOJ.**  Within three (3) business days of receiving all of the Parties' signatures to this Settlement Agreement, Baykeeper shall submit this Settlement Agreement to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) calendar days after receipt by DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Settlement Agreement, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

28.  **Dismissal of Complaint:**  If there is no objection by DOJ to this Settlement Agreement, the Parties shall (a) request the approval and entry of this Settlement Agreement in the exact form presented to DOJ, and (b) concurrently stipulate to and request dismissal of this action with prejudice.  Such dismissal shall not affect the rights and obligations of the Parties under this Settlement Agreement, nor shall it affect the power of the Court to enforce this Settlement Agreement.

<h3 style="text-align:center">VIII.        WAIVER AND RELEASES</h3>

29.  **Baykeeper Waiver and Release of Noticed Parties**:  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases PRAW, its owners, officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

30.  **PRAW's Waiver and Release of Baykeeper**:  PRAW, on its own behalf and on behalf of its owners, officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could

have been claimed for matters included in the 60-Day Notice and/or the Complaint.

## IX.      MISCELLANEOUS PROVISIONS

31.   **Execution in Counterparts**:  The Settlement Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

32.   **Signatures**:  The Parties' signatures to this Settlement Agreement transmitted by facsimile or electronic mail transmission shall be deemed binding.

33.   **Construction**:  The language in all parts of this Settlement Agreement, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Settlement Agreement are for reference only and shall not affect the construction of this Settlement Agreement.

34.   **Authority to Sign**:  The undersigned are authorized to execute this Settlement Agreement on behalf of their respective Party and have read, understood and agreed to all of the terms and conditions of this Settlement Agreement.

35.   **Integrated Settlement Agreement**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Settlement Agreement are contained herein.

36.   **Severability**:  In the event that any of the provisions of this Settlement Agreement are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

37.   **Choice of Law**:  This Settlement Agreement shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

38.   **Full Settlement**:  This Settlement Agreement constitutes a full and final settlement of this matter.

39.   **Effect of Settlement Agreement**:  Compliance with this Settlement Agreement does not mean PRAW is complying with the Industrial Stormwater Permit, Clean Water Act, or any other law, rule, or regulation.

40.   **Negotiated Agreement**:  The Parties have negotiated this Settlement Agreement, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Parties jointly prepared this Settlement Agreement, and any uncertainty and ambiguity shall not be interpreted against

any one Party.

41.   **Modification of the Agreement**:  This Settlement Agreement, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Parties.

42.   **Assignment**:  Subject only to the express restrictions contained in this Settlement Agreement, all of the rights, duties and obligations contained in this Settlement Agreement shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

43.   **Notices and Submissions**:  Any notices or documents required or provided for by this Settlement Agreement or related thereto that are to be provided to Baykeeper pursuant to this Settlement Agreement shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

> San Francisco Baykeeper
> Attention: Nicole Sasaki
> 1736 Franklin Street, Suite 800
> Oakland, California 94612
> Email:  nicole@baykeeper.org

Unless requested otherwise by PRAW, any notices or documents required or provided for by this Settlement Agreement or related thereto that are to be provided to PRAW pursuant to this Settlement Agreement shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

> Pinole Rodeo Auto Wreckers
> Attention: James F. Taylor
> 700 Parker Avenue
> Rodeo, California 94572
> Email: pinolerodeoauto@aol.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any changes of address or addressees shall be communicated in the manner described above for giving notices.

44.   **Impossibility of Performance**:  No Party shall be considered to be in default in the performance

of any of its obligations under this Settlement Agreement when performance becomes impossible due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood.  "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship, or inability to pay.  Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

The Parties hereto enter into this Settlement Agreement, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

SAN FRANCISCO BAYKEEPER

Date:  September 16, 2016

_____

Nicole C. Sasaki
Associate Attorney, San Francisco Baykeeper

JAMES F. TAYLOR dba PINOLE RODEO AUTO WRECKERS

Date:

_____

James F. Taylor
Owner, Pinole Rodeo Auto Wreckers

APPROVED AND SO ORDERED, this ___ day of _____.

UNITED STATES DISTRICT JUDGE

_____

Honorable Maria-Elena James

of any of its obligations under this Settlement Agreement when performance becomes impossible due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood. "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship, or inability to pay. Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

The Parties hereto enter into this Settlement Agreement, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

SAN FRANCISCO BAYKEEPER

Date: September 16, 2016

Nicole C. Sasaki
Associate Attorney, San Francisco Baykeeper

JAMES F. TAYLOR dba PINOLE RODEO AUTO WRECKERS

Date:

9-16-16

James F. Taylor
Owner, Pinole Rodeo Auto Wreckers

APPROVED AND SO ORDERED, this _19_ day of ___January 2017___.

UNITED STATES DISTRICT JUDGE

Honorable Maria-Elena James

# EXHIBIT 1

### Target Levels for Stormwater Sampling

| Constituent | Target Levels | Source |
|---|---|---|
| **pH** | 6 – 9 SU | *California Industrial General Permit 2014-0057-DWQ* |
| **Total Suspended Solids** | 100 mg/L | *Multi-Sector General Permit 2015 Sector-specific benchmark;* *California Industrial General Permit 2014-0057-DWQ* |
| **Oil and Grease** | 15 mg/L | *Multi-Sector General Permit 2000 benchmark;* *California Industrial General Permit 2014-0057-DWQ* |
| **Total Aluminum** | 0.75 mg/L | *Multi-Sector General Permit 2015 Sector-specific benchmark;* *California Industrial General Permit 2014-0057-DWQ* |
| **Total Iron** | 1.0 mg/L | *Multi-Sector General Permit 2015 Sector-specific benchmark;* *California Industrial General Permit 2014-0057-DWQ* |
| **Total Lead** | 0.262 mg/L | *California Industrial General Permit 2014-0057-DWQ* |